UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DAVID D. HOUGHTON,

    Plaintiff,

    v.

ACTING COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 3:21-CV-189 JD

**OPINION AND ORDER**

Plaintiff David Houghton has appealed an Administrative Law Judge's denial of his claim for disability and disability insurance benefits after the ALJ found that Mr. Houghton was not disabled and thus not entitled to benefits. Mr. Houghton and the Acting Commissioner have fully briefed Mr. Houghton's appeal. After considering the parties' briefing and the filed administrative record, the Court finds, for the following reasons, that a remand of the case to the Acting Commissioner for further proceedings is warranted.

**A.**    **Factual Background**

Mr. Houghton applied for disability benefits in February 2019, alleging that he had become unable to work starting on May 1, 2018. (R. 173.) In his application, Mr. Houghton alleged that he was disabled because of a variety of conditions, including protruding tailbone, depression, anxiety, and tendinitis. (R. 208.) In June 2019 and October 2019, the Social Security Administration denied Mr. Houghton's claim at the initial and reconsideration levels of review. (R. 10.)

Mr. Houghton appealed and an ALJ held a hearing on Mr. Houghton's claim in September 2020. During the course of the hearing, the ALJ heard testimony from Mr. Houghton about his conditions and testimony from a vocational expert about the possibility of Mr. Houghton being able to work in spite of his conditions. (R. 35–65.) After holding the hearing and reviewing Mr. Houghton's medical records, the ALJ issued an opinion finding that Mr. Houghton was not disabled. (R. 10–22.) The ALJ determined that Mr. Houghton suffers from multiple severe impairments, including degenerative disc disease of the cervical and lumbar spine, bilateral hip joint degeneration, and a possible right shoulder disorder. (R. 13.) However, the ALJ found that Mr. Houghton's mental impairments, including his major depressive and bipolar disorders, were non-severe impairments despite creating mild limitations to his mental functioning. (R. 13–15.)

The ALJ did not find that any of Mr. Houghton's impairments or combinations of impairments was equal in severity to the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 15.) Additionally, after reviewing the record and listening to Mr. Houghton at the hearing, the ALJ concluded that Mr. Houghton has the residual functional capacity ("RFC") to "perform medium work . . . except as reduced by the following. The claimant can frequently climb ramps, stairs, ladders, ropes, scaffolds, he can frequently balance, stoop, kneel, crouch and crawl, and he can frequently lift overhead with the right dominant upper extremity." (R. 16.) Based on that RFC and the ALJ's questioning of the vocational expert at the hearing, the ALJ found that Mr. Houghton could perform his prior job as a skilled truck crane operator and was therefore not disabled. (R. 21–22.) Mr. Houghton requested that the Appeals Council review the ALJ's decision. The Appeals Council denied Mr. Houghton's request on January 13, 2021,

making the ALJ decision the final decision of the Acting Commissioner for purposes of judicial review. (R. 1); *see* 42 U.S.C. § 405(g).

B.  **Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Acting Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Acting Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Acting Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Acting Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Acting Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*,

245 F.3d 881, 887 (7th Cir. 2001). Additionally, the ALJ must provide a "logical bridge" between the evidence and any conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

**C.    Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At Step 2, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At Step 3, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's RFC, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be

done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the RFC to determine whether the claimant can perform other work in society at Step 5. 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at Steps 1 through 4, but the burden shifts to the Commissioner at Step 5 to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**D.     Discussion**

Mr. Houghton argues that the ALJ's decision should be remanded for several reasons. He argues that: (1) the decision is premised on cherry-picked evidence and failed to provide an accurate and logical bridge; (2) the state agency opinions on which the ALJ relied were outdated and unsupported; (3) the RFC was unsupported because it did not accommodate Mr. Houghton's mental conditions or physical conditions; (4) the ALJ erred in assessing Mr. Houghton's subjective statements; and (5) the ALJ did not give the vocational expert a complete picture of Mr. Houghton's functional capacity. (DE 23 at 1.) The Court agrees that the ALJ erred in building a logical bridge between the evidence and the ultimate RFC that she reached and finds remand necessary for that reason. The parties can address any remaining arguments not addressed in this order on remand.

An ALJ is charged with determining an individual's RFC, meaning "what an individual can still do despite his or her limitations." SSR 96-8p. The ALJ makes that determination based upon medical evidence as well as other evidence, including testimony by the claimant. *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). In making a proper RFC determination, an ALJ must consider all of the relevant evidence in the record, even evidence relating to limitations that are not severe. *Id.*; *see* 20 C.F.R. § 404.1529(a). The ALJ must also

5

"articulate in a rational manner the reasons for [her] assessment of a claimant's residual functional capacity," *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009), in a way that builds "an accurate and logical bridge from the evidence to the conclusion," *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007); *see Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (holding that an ALJ's failure to explain how he or she arrived at RFC conclusions, in itself, warrants reversal); SSR 96-8p at *7. Failure to meet those standards requires reversal. *See Stewart*, 561 F.3d at 684; *Giles*, 483 F.3d at 487; *Briscoe*, 425 F.3d at 352.

The Court finds that the lack of a logical bridge spans two different portions of the available evidence, Mr. Houghton's potential mental impairments and Mr. Houghton's potential physical impairments. The Court addresses each separately.

### *1.     Mental Impairments*

While Mr. Houghton made several different mental impairment-related arguments in his briefing, the Court focuses here on his argument that remand is needed because "the ALJ failed to incorporate *any* mental restrictions whatsoever in the RFC, despite well-settled precedent requiring such work-related restrictions." (DE 15 at 13) (emphasis in original) (citing SSR 96-8p). Mr. Houghton is correct that the ALJ's RFC did not include any mention of mental impairments or any limitations based on mental impairments. (R. 16) (listing the RFC).[1] The Court finds that lack of consideration problematic.

The ALJ's consideration of Mr. Houghton's mental impairments in relation to an ultimate RFC began near the end of her analysis of Mr. Houghton's mental impairments at Step 2 of her

---

[1] The Court notes that Mr. Houghton disputed the ALJ's mental impairment-related findings at both Step 2 and Steps 4 and 5. For purposes of this order, the Court, while mentioning the ALJ's analysis in Step 2, only focuses on the adequacy of the ALJ's analysis, or lack thereof, of mental impairments in Steps 4 and 5 when coming to an RFC and leaves any analysis of the ALJ's Step 2 analysis for remand.

6

analysis. The ALJ ended Step 2 of her analysis by finding that Mr. Houghton's mental impairments, based on the available evidence, were non-severe and that Mr. Houghton had "mild" limitations for three of the four "Paragraph B" mental functioning criteria, namely: understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace. (R. 15) (citing 20 C.F.R., Part 404, Subpart P, Appendix 1). The ALJ then correctly recognized that "[t]he limitations identified in the 'Paragraph B' criteria are not a residual functional capacity assessment" and that the "mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." (R. 15); SSR 96-8P. Finally, she stated that "[t]he following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (R. 15.)

The problem that the ALJ and Acting Commissioner cannot overcome, however, is that the ALJ then failed to provide any explanation for how her conclusions about Mr. Houghton's "mild" mental impairments affected the RFC she ultimately settled on. The Court finds that the most the ALJ did in Steps 4 and 5 of her analysis was to briefly list some medical evidence related to Mr. Houghton's mental impairments without ever actually explaining how she analyzed the mental impairments or thought they might interact with Mr. Houghton's physical limitations to affect his RFC. (R. 17–19) (making note of three comments about mental health Mr. Houghton made during the course of his several years of medical appointments).

The Acting Commissioner's briefing simply listed the three observations the ALJ had made in the RFC and thus did not convincingly address this issue despite Mr. Houghton raising it in his briefing. The Acting Commissioner specifically argued that the "ALJ also considered Plaintiff's mental impairments later in the decision, while evaluating his RFC" by making note

7

of the fact that the medication Effexor had helped Mr. Houghton somewhat with his depression (R. 17, 48–49), that Mr. Houghton had denied anxiety or depression during a June 2018 medical visit (R. 18, 412), and that Mr. Houghton had reported a difference in his mental health without his medication during another visit (R. 19, 397). (DE 22 at 6.) While the Court recognizes that the ALJ did make those observations, it is well established that "summarizing a medical history is not the same thing as analyzing it" when attempting to "build a logical bridge from evidence to conclusion." *Chuk v. Colvin*, 2015 WL 6687557, at *7 (N.D. Ill. Oct. 30, 2015). The ALJ's mentioning of Mr. Houghton's reports during those three appointments came without any actual analysis of what that medical history meant for Mr. Houghton's overall mental impairments and RFC, which is particularly problematic because the ALJ clearly found the mental impairments had some effect given that she assessed mild limitations in three out of four mental health categories in Step 2. (R. 15, 17–19.)

Such a lack of analysis in forming an RFC after finding mild mental limitations has led prior courts to remand. *See Miller v. Comm'r of Soc. Sec.*, 2017 WL 1421271, at *7–8 (N.D. Ind. Apr. 21, 2017) (collecting cases) ("Therefore, even if the ALJ was correct at step two in finding [claimant's] mental impairments not severe (and the court is not saying that the ALJ was correct in doing so), the ALJ *still* erred by failing to consider the effect of those mild mental limitations during his RFC analysis at step four.") (emphasis in original); *see also Dross-Swart v. Astrue*, 872 F. Supp. 2d 780, 795 (N.D. Ind. 2012) (remanding case where the ALJ found mild limitations in activities of daily living, social functioning, and concentration, persistence, or pace, but failed to incorporate them into the RFC analysis). Additionally, courts have remanded for the very issue present here, where the ALJ stated at the end of her Step 2 analysis that the "following residual functional capacity assessment reflects the degree of limitation the

undersigned has found in the 'paragraph B' mental function analysis" (R. 15), but then failed to ever actually explain how the RFC "reflected" the degree of limitation. *See Muzzarelli v. Astrue*, 2011 WL 5873793, at *10 (N.D. Ill. Nov. 18, 2011) ("It is unclear what the ALJ meant by saying that the RFC 'reflects' his Step 2 finding concerning [the claimant's] mild impairments"); *see also Alesia v. Astrue*, 789 F. Supp. 2d 921, 933 (N.D. Ill. 2011) ("But [this sentence at the end of Step 2] was not enough, because the combined impact of the impairments must be considered throughout the disability determination process") (citations and internal quotations omitted). "If the ALJ believed that the mild limitations in these functional areas did not merit a non-exertional limitation in the RFC, [she] was obligated to explain that conclusion so that [the Court] can follow the basis of [her] reasoning." *Muzzarelli*, 2011 WL 5873793, at *23 (citing *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005)); *see also Brandy D. S. v. Kijakazi*, 2022 WL 969653 (S.D. Ind. Mar. 31, 2022).

While the support for remand is present in the above-cited cases, the Court also notes for completeness that the ALJ's error in failing to fully explain how Mr. Houghton's mental impairments affected the RFC was not harmless error, because a proper consideration of the impairments could have resulted in a different outcome. *See Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) (holding that an error is harmless if the ALJ would have reached the same result even without the error). The ALJ was required to consider all impairments in the aggregate in constructing an RFC, regardless of the severity of any individual impairment. *Terry*, 580 F.3d at 477; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (holding that a failure to account for a claimant's impairments, including non-severe impairments, warrants reversal). And "even mild limitations in understanding, remembering or applying information and concentrating, persisting or maintaining pace can impact an individual's ability to perform past

9

semi-skilled work." *John P. v. Saul*, 2019 WL 4072118, at *4 (N.D. Ind. Aug. 28, 2019) (citing *Winfield v. Comm'r of Soc. Sec.*, 2013 WL 692408, at *3 (N.D. Ind. Feb. 25, 2013)). While the Court recognizes that its role is not to reach an ultimate decision about what the evidence shows, it notes that the evidence of Mr. Houghton's mental impairments, viewed in the aggregate, could suggest that Mr. Houghton's mental impairments have worsened over time and that his ability to function may vary from day to day. (R. 42, 44, 350–59, 408–09) (suggesting Mr. Houghton may have issues understanding the nature of his impairment, the gravity of his symptoms, the importance of medication and treatment, his hygiene, and his ability to control impulses). This evidence could suggest to an ALJ that Mr. Houghton's impairments, though non-severe, would combine with his physical impairments to require, for example, more frequent breaks or a workplace with limited distractions or triggers. *Jeremy S. v. Saul*, 2021 WL 1208130, at *3 (N.D. Ill. Mar. 31, 2021) (finding specific limitations for things like distractions or triggers may be needed based on an individual's mental impairments). The Court recognizes that the ALJ may very well have determined that this mental medical evidence was not enough to warrant limitations in the RFC, but without any explanation that she did so or insight into her reasoning, the Court cannot find that she built a logical bridge between the evidence and her ultimate conclusion. Remand is therefore warranted. *See Brandy*, 2022 WL 96953; *Miller*, 2017 WL 1421271 at *7–8.

    *2.    Physical Impairments*

The Court additionally finds that remand is required because the ALJ failed to build an adequate logical bridge between the medical evidence surrounding Mr. Houghton's physical impairments and the RFC she ultimately reached. The primary problem with the ALJ's physical findings in the RFC is that her conclusion that Mr. Houghton can "perform medium work as

defined in 20 CFR 404.1567(c)" with certain restrictions is based on a selective and inadequately explained review of the agency consultants' medical opinions. "Medium work" as defined in the regulations "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. 404.1567(c). Medium work also generally requires standing or walking, off and on, for about six hours in an eight-hour day, regular use of arms and hands to grasp and hold objects, and a "considerable amount of lifting" with the "critical" requirement being that the individual can frequent lift and carry objects weighing up to 25 pounds. SSR 83-10.

      The ALJ summarized much of the available medical evidence in arriving at the RFC, but the specific determination that medium work as opposed to light work was proper was based on the ALJ's finding that one state agency consultant's opinion was more reliable than another state agency consultant's opinion. (R. 20.) The two state agency consultants, one who gave an initial opinion of medium work capability and the other who gave an opinion on reconsideration of light work capability, were the only medical sources to render an opinion on Mr. Houghton's physical capabilities. The ALJ found that "the initial Agency determination for limitation to medium exertion is more persuasive than [the] reconsideration determination for a residual functional capacity [] limitation to light exertion." (R. 20.) In explaining her reasoning for that finding about persuasiveness, the ALJ stated that the agency opinion supporting light work was "made without medical explanation or rationale," was not consistent with the "absence of evidence for clinical worsening" of the physical impairments, and "did not reasonably explain the rationale used" for reducing Mr. Houghton's functional capacity to light work. (R. 20–21) ("In fact, Agency physicians continued to essentially cite the same clinical exam findings/evidence use[d] to determine limitation to medium exertion, while noting subjective

11

allegation for worsening, but again essentially no clinical findings supportive of or consistent with clinical worsening").

The Court finds that reasoning faulty and that it exhibits inappropriate cherry-picking of the evidence. The primary problem is the ALJ's conclusion that the second agency opinion, from a Dr. Smartt, "appear[ed] primarily based on the claimant's subjective claims of functional limitation" and little else, including no clinical findings supportive of Mr. Houghton's provided statements. (R. 21.) While it does appear that Dr. Smartt relied to a certain extent on Mr. Houghton's subjective statements about his tailbone pain getting worse along with his host of back pain issues (R. 85), the ALJ appears to have missed that there was a medical examination performed in between the time that the first and second agency opinions were issued that appeared to corroborate Mr. Houghton's claims of worsening back pain and thus Dr. Smartt's light work limitation. (R. 79) (showing that a consultative examination from September 20, 2019, was considered as part of Dr. Smartt's opinion on reconsideration).

The September 2019 consultative examination, which was not available before the first agency opinion in June 2019, included a physical examination that led the doctor performing the examination, Dr. Vijay Kamineni, to conclude that Mr. Houghton had "coccyx pain," "rib pain," and "chronic bilateral thoracic back pain" that left him only able to "carry twenty pounds short distances" and "lift ten pounds over [his] head one time." (R. 347.) The ALJ failed to mention this examination at all, which is notable to the Court both because Dr. Smartt appeared to refer to that examination as new medical evidence that he reviewed before issuing his opinion and because that medical evidence would be a basis for Dr. Smartt to find that Mr. Houghton had to

12

be limited to light work.[2] (R. 85); see *Strong ex rel. M.H. v. Astrue*, 2012 WL 6186831, at *9 (N.D. Ill. Dec. 12, 2012) (remanding when ALJ failed to discuss consultations that indicated the claimant's subjective allegations were credible). Further, while the ALJ dismissed Dr. Smartt's opinion in part because of "an absence of evidence for clinical worsening," she failed to acknowledge that Dr. Smartt's opinion could well have been accounting for what the record demonstrates as degeneration in Mr. Houghton's hips, lumbar back, and cervical spine over time, (R. 302, 392, 403), as well as tendonitis that caused numbness and tingling in Mr. Houghton's dominant right hand, (R. 299, 302, 314, 318, 320, 323). The ALJ's failure to account for or explain away the new and more recent evidence from Dr. Kamineni, as well as other evidence in the record that could suggest that Mr. Houghton's condition was indeed worsening, is problematic. It suggests to the Court that the ALJ did not consider all of the evidence, or at least cherry-picked evidence, in discounting Dr. Smartt's opinion on reconsideration as relying on "essentially no clinical findings supportive of or consistent with clinical worsening." (R. 20); *Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020) ("An ALJ cannot simply cherry-pick facts supporting a finding of non-disability while ignoring evidence that points to a disability finding").

This error was also not harmless, because the difference between an RFC that allows for medium work and an RFC that only allows for light work is consequential for Mr. Houghton. As Mr. Houghton has argued in his briefing, if the ALJ had found that he was only capable of light work, that finding, in conjunction with his age and the likely finding that he only had non-transferrable skills associated with his past, medium-work-level employment, would render him

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. 404.1567(b)

13

disabled under Grid Rule 202.06. (DE 15 at 7, n.9) (citing Grid Rule 202.06, 20 C.F.R. Part 404, Subpart P, App. 2). Such a finding would have clearly changed the outcome of his case by changing the ultimate determination in regard to Mr. Houghton from one of no disability to one of disability.

The Court additionally notes that the Acting Commissioner did not provide any substantive argument to counter Mr. Houghton's argument, discussed above, about the ALJ's cherry-picked evidence in evaluating the agency opinions. The extent of the Acting Commissioner's response was to state that "[t]he ALJ evaluated the two State agency consultants' opinions, explaining why she found the initial assessment for medium work more persuasive than the reconsideration assessment for light work." (DE 22 at 9) (citing R. 20–21). The Court agrees that the ALJ offered an explanation, but for the reasons discussed above, that explanation was lacking because it relied on cherry-picked information and ignored key information that could have supported an alternate finding more beneficial to Mr. Houghton. The ALJ thus failed to build a logical bridge between the evidence, including the agency consultants' opinions, and the ultimate RFC that suggested Mr. Houghton could participate in medium work. That error and lack of logical bridge warrants remand. *See Stewart*, 561 F.3d at 684; *Giles*, 483 F.3d at 487; *Briscoe*, 425 F.3d at 352.

In reaching its decisions about remand, the Court recognizes that the RFC is a legal determination made by the ALJ, not a medical determination. However, it reiterates that an ALJ must consider all the relevant evidence in the record, evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection, and fully explain her reasoning behind the RFC that she ultimately assigns. *Golembiewski*, 322 F.3d at 917; *Zurawski*, 245 F.3d at 888. The Court also recognizes that an ALJ need only minimally articulate her justification for

14

accepting or rejecting specific evidence of disability. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). Here, as explained above, the ALJ's decision cannot stand because it lacks the required discussion of the issues and analysis that forms a logical bridge between the record evidence and the ALJ's conclusions. *See Stewart*, 561 F.3d at 684; *Lopez*, 336 F.3d at 539. The Acting Commissioner can address that issue, as well as the other arguments Mr. Houghton has raised, on remand.

E.  **Conclusion**

For the foregoing reasons, the Court REVERSES the Acting Commissioner's decision and REMANDS this matter to the Acting Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: September 20, 2022

                                                /s/ JON E. DEGUILIO
                                                Chief Judge
                                                United States District Court